U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described**.

**Signed April 29, 2010**                                   **United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| THE OCEANAIRE TEXAS RESTAURANT COMPANY, L.P., *et al.*,[1] | Case No.: 09-34262-bjh-11 |
| Debtors. | Jointly Administered |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW WITH RESPECT TO CONFIRMATION OF THE FIRST AMENDED JOINT PLAN OF REORGANIZATION PROPOSED BY THE DEBTORS AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE

---

[1]      The other Debtors in these cases include The Oceanaire Restaurant Company, Inc., The Oceanaire, Inc., The Oceanaire Investment Company, Inc., The Oceanaire Minneapolis Restaurant Company, LLC, and The Oceanaire Texas Beverage Company, Inc.

On April 26, 2010, the Court conducted a hearing (the "Confirmation Hearing") to consider confirmation of the *First Amended Joint Plan of Reorganization Proposed by the Debtors and Official Committee of Unsecured Creditors Under Chapter 11 of the United States Bankruptcy Code* [Docket No. 540] (the "Joint Plan").[2]  Having considered the Joint Plan, all timely-filed objections to confirmation of the Joint Plan, the evidence presented, and arguments of counsel, and having taken judicial notice of the pleadings and evidence presented in this case, the Court hereby enters its findings of fact and conclusions of law with respect to, and in support of, its separate order confirming the Joint Plan (the "Confirmation Order"), as follows:[3]

## FINDINGS OF FACT

## BACKGROUND OF THE CASE

### A.     The Debtors' Businesses

1.     The Oceanaire, Inc. is the parent of its two direct, wholly owned subsidiaries – The Oceanaire Restaurant Company, Inc. and The Oceanaire Investment Company, Inc.  The Oceanaire Investment Company, Inc. is the limited partner and 99% interest holder of The Oceanaire Texas Restaurant Company, L.P.  The Oceanaire Restaurant Company, Inc. holds the remaining 1% and is the general partner of The Oceanaire Texas Restaurant Company, L.P.  The Oceanaire Minneapolis Restaurant Company, LLC and The Oceanaire Texas Beverage Company, Inc. are wholly owned subsidiaries of The Oceanaire Restaurant Company, Inc.

2.     The business of the Debtors is the ownership and operation of The Oceanaire Seafood Room restaurants ("The Oceanaire").  On the Petition Date (July 5, 2009), the Debtors

---

[2] The Joint Plan shall include all modifications thereof as approved by the Court in the Confirmation Order and/or on the record at the Confirmation Hearing.  Unless separately defined herein or in the Confirmation Order, all capitalized terms herein shall have the meanings ascribed to such terms in the Joint Plan.

[3] To the extent that any finding of fact herein or in the Confirmation Order is or may be construed as a conclusion of law, it shall also constitute a conclusion of law.  Similarly, to the extent that any conclusion of law herein or in the Confirmation Order is or may be construed as a finding of fact, it shall also constitute a finding of fact.

operated sixteen restaurants located across the country, and held a lease for a seventeenth location yet to be opened. As of the Petition Date, restaurants were operated in the following cities: Washington, D.C.; Minneapolis, Minnesota; Seattle, Washington; Dallas, Texas; Indianapolis, Indiana; San Diego, California; Atlanta, Georgia; Baltimore, Maryland; Charlotte, North Carolina; Philadelphia, Pennsylvania; Houston, Texas; Miami, Florida; Orlando, Florida; Denver, Colorado; Boston, Massachusetts; and Cincinnati, Ohio.

**B.      The Bankruptcy Filing and Financing of the Case**

3.      On July 5, 2009 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*. (the "Bankruptcy Code"), thereby initiating the above-captioned cases with the Court (collectively, the "Bankruptcy Case"). Since the Petition Date, and pursuant to Sections 1107 and 1108 of the Bankruptcy Code, the Debtors have been operating and managing their businesses and property of the Estate as debtors in possession.

4.      On July 21, 2009, the U.S. Trustee's Office appointed an Official Committee of Unsecured Creditors (the "Committee"). As of the date hereof, no trustee, examiner or other statutory creditors' committees have been appointed in the Bankruptcy Case.

5.      Following the Committee's appointment, the Debtors, the Agent and the Lenders agreed upon the terms of a cash collateral order in the case and on August 6, 2009, the Court entered a *Final Order (I) Authorizing Debtors to Use Cash Collateral Pursuant to 11 U.S.C. §363, and (II) Granting Adequate Protection to Prepetition Secured Parties Pursuant to 11 U.S.C. §§ 361, 362, and* [Docket No. 136] (as amended, extended, and otherwise modified from time to time, the "Cash Collateral Order"). Since that time, the Debtors have continued to operate under the terms of the Cash Collateral Order.

## THE CHAPTER 11 PLAN

### A. Procedural Background

6.     On March 16, 2010, the Debtors and the Committee (collectively, the "Plan Proponents") filed the Joint Plan [Docket No. 540].  On the same date, the Plan Proponents filed their proposed *Disclosure Statement for Joint Plan of Reorganization Proposed by the Debtors and Official Committee of Unsecured Creditors Under Chapter 11 of the United States Bankruptcy Code* [Docket No. 541] (the "Proposed Disclosure Statement").

7.     The Proposed Disclosure Statement (the "Disclosure Statement"), was approved under Section 1125 of the Bankruptcy Code pursuant to the Court's *Order (A) Approving Joint Disclosure Statement for the First Amended Joint Plan of Reorganization Proposed by the Debtors and Official Committee of Unsecured Creditors Under Chapter 11 of the United States Bankruptcy Code, (B) Scheduling a Hearing to Consider Confirmation of First Amended Joint Plan of Reorganization Proposed by the Debtors and Official Committee of Unsecured Creditors Under Chapter 11 of the United States Bankruptcy Code, (C) Establishing Voting and Objection Deadlines, and (D) Approving Shortened Balloting, Solicitation, Voting and Notice Procedures* [Docket No. 543] (the "Disclosure Statement Order").

8.     Pursuant to the Disclosure Statement Order, the Court also: (a) approved the forms of each Ballot, the Confirmation Hearing Notice and the Solicitation Letter;[4] (b) established specific balloting and tabulation procedures to be applied in determining votes on the Joint Plan (collectively, the "Balloting Procedures"); (c) approved the appointment of Garden City (the "Balloting Agent") as the party responsible for receiving executed Ballots, determining and tabulating votes on the Joint Plan, and determining whether each particular impaired class of

---

[4] Final forms of the Ballots approved by the Court are attached as exhibits to Docket No. 546.

Claims under the Joint Plan has accepted or rejected the Joint Plan, subject to final determination by the Court; (d) fixed a deadline of April 19, 2010, at 5:00 p.m. (Central), for the return of Ballots to the Balloting Agent (the "Voting Deadline"); (e) fixed a deadline of April 19, 2010, at 5:00 p.m. (Central), for the filing and service of objections to confirmation of the Joint Plan (the "Objection Deadline"); and (f) approved noticing and service requirements and procedures (collectively, the "Solicitation Requirements") in relation to the form and manner of providing notice of the Confirmation Hearing and Objection Deadline and service of the Disclosure Statement, Joint Plan, Ballots and Disclosure Statement Order (collectively, the "Solicitation Materials").

9.     The Plan Proponents timely complied with all of the Solicitation Requirements. Accordingly, proper and sufficient notice of the Confirmation Hearing and Objection Deadline was provided to Creditors, Equity Interest holders, and all other parties in interest entitled to notice, and the Plan Proponents properly and fairly distributed the Solicitation Materials to all holders of Claims who were entitled to vote on the Joint Plan.

10.     The Joint Plan facilitates the acquisition of the Debtors by Landry's Restaurants, Inc. ("Landry's"), which was proposed as the Equity Sponsor by the Plan Proponents. Pursuant to the terms of that certain *Order (A) Approving Landry's Restaurants, Inc. as the Stalking Horse Bidder, (B) Authorizing and Scheduling an Auction for the Stock of the Reorganized Debtors, (C) Approving Procedure for the Submission of Qualifying Bids, (D) Approving Break-Up Fee, (E) Approving Form of Stock Purchase Agreement, and (F) Approving the Form and Manner of Notice Pursuant to Federal Rule of Bankruptcy Procedure 2002* ("Bid Procedure Order"), Landry's was approved as the "stalking horse bidder" for the Debtors and ultimately announced as the winning bidder following the duly noticed and court approved Auction for the stock on

April 13, 2010. Prior to the Auction, the Plan Proponents received no other bid packages in accordance with the Bid Procedures Order and no other Qualified Bidder contacted the Plan Proponents or participated in the Auction. Landry's was, and hereby is, deemed to be the only Qualified Bidder under the Bid Procedures Order and was properly selected as the winning bidder by the Plan Proponents at the Auction pursuant to the terms set forth in the SPA and Joint Plan.

**B. Objections and Agreements in Resolution Thereof**

11. All objections to the Joint Plan have either been (i) resolved and withdrawn as provided in the Confirmation Order and reflected on the record by the parties thereto, (ii) sustained in part resulting in modifications to the Joint Plan as reflected in the Creditor Trust Agreement and this Order for the reasons as stated by the Court on the record; or (ii) overruled as a result of modifications to the Joint Plan as provided in the Confirmation Order and/or for the reasons as stated by the Court on the record.

## CONSIDERATION OF CONFIRMATION REQUIREMENTS

**A. Section 1129(a)(1) Requirements**

12. In determining whether the Joint Plan complies with applicable provisions of the Bankruptcy Code, the Court considered, among other things, whether the Joint Plan complies with Sections 1122 and 1123 of the Bankruptcy Code, as follows:

*Classification of Claims and Equity Interests (11 U.S.C. §§ 1122, 1123(a)(1))*

13. The Joint Plan classifies Claims and Equity Interests in the Bankruptcy Case as follows:

> Unclassified
> Administrative Claims
> Priority Tax Claims

<u>Classified Claims and Equity Interests</u>
Class 1: Other Priority Claims
Class 2: Lenders' Secured Claims
Class 3: Other Secured Claims
Class 4: General Unsecured Claims
Class 5: Intercompany Claims
Class 6: Intercompany Equity Interests
Class 7: Existing Equity Interests

As reflected by the above, the Joint Plan designates Classes for all Claims, with the exception of Claims of a kind specified in Section 507(a)(2) of the Bankruptcy Code (Administrative Claims under the Joint Plan) and Section 507(a)(8) of the Bankruptcy Code (Priority Tax Claims under the Joint Plan), and designates a Class for Equity Interests.

14.     With respect to such classification, each Claim or Equity Interest within a particular Class under the Joint Plan is substantially similar to all of the other Claims or Equity Interests within such Class, and there are significant differences between the legal nature and/or priority of the Claims or Equity Interests in each particular Class and the Claims or Equity Interests in each other Class.

*Specification of Impairment (11 U.S.C. § 1123(a)(2))*

15.     Article II, (A)(3) and (4) of the Joint Plan clearly identify whether each particular Class is impaired under the Joint Plan. As specified in Article II, (A)(3) and (4) of the Joint Plan, Classes 1, 3, 5 and 6 have been identified as unimpaired under the Joint Plan.

*Specification of Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3))*

16.     Article IV of the Joint Plan specifies the treatment provided for each of the Classes of Claims and Equity Interests under the Joint Plan, including each Class of Claims and each Class of Equity Interests that is impaired under the Joint Plan.

*Same Treatment Within Classes (11 U.S.C. § 1123(a)(4))*

17.     Under the Joint Plan, all Claims and Equity Interests within each particular Class will receive the same treatment unless, in the case of Classes of Claims, the holder of a particular Claim agrees to less favorable treatment of its Claim.

*Adequate Means for the Plan's Implementation (11 U.S.C. § 1123(a)(5))*

18.     The Joint Plan sets out all necessary provisions for its implementation. *See, e.g.*, Article VIII (article of the Joint Plan devoted to implementation). Collectively, the following provisions of the Joint Plan adequately provide for implementation of the Joint Plan:

- Sections A and C of Article VIII reference and incorporate the Bid Procedure Order, the Auction and selection of the Equity Sponsor and sale to the Equity Sponsor.

- Article V of the Joint Plan provides for the creation, funding and administration of the Creditor Trust, including specifying which assets of the Estate will be transferred to the Creditor Trust and the conditions under which assets would revert back to the Reorganized Debtors.

- Article V(B) provides for the appointment of the Creditor Trustee. The name of the Creditor Trustee is disclosed in the Creditor Trust Agreement, which was duly and properly filed as part of the Plan Supplement.

*Permissive Provisions of the Plan (11 U.S.C. § 1123(b))*

19.     The Joint Plan also contains several non-mandatory provisions, including the following:

- Article VI of the Joint Plan sets out the specifics of how distributions under the Joint Plan will be made, including, without limitation, interim distribution procedures, withholding provisions, reserve requirements, and undeliverable/unclaimed and disputed distribution procedures, all of which are reasonable.

- Article VII of the Joint Plan establishes procedures for the disposition of Disputed Claims, including, without limitation, the establishment of a deadline for objections to Claims, the establishment of a reserve for Disputed Claims, post-confirmation claim filing and amendment requirements, and authorization for the settlement of Disputed Claims, all of which procedures are reasonable and appropriate.

- Articles IX and XIV of the Joint Plan provide for the enforcement of protections afforded by Section 1141 of the Bankruptcy Code.

- Article IX (F) of the Joint Plan provides for the preservation and transfer of Causes of Action to the Creditor Trust, with the Creditor Trustee to have standing, independently and as the representative of the Estate, to enforce, prosecute and settle such Causes of Action.

- Article IX (H), as modified by the Confirmation Order, provides exculpation protections afforded by Section 1125 of the Bankruptcy Code.

- Article IX (G) provides for releases by the Debtors and their Estates.

- Article X sets out jurisdictional provisions designed to acknowledge the Court's continuing post-confirmation jurisdiction to the fullest extent permitted by law.

- Article XII (A) - (C) of the Joint Plan provides for the disposition of executory contracts and unexpired leases and the treatment of rejection damage Claims. In this regard, Article XII (A) of the Joint Plan provides for the assumption of the Assumed Store Location Leases and Contracts and all other executory contracts and unexpired leases listed in the Plan Supplement and the rejection, as of the Confirmation Date, of all other executory contracts and unexpired leases under Section 365 of the Bankruptcy Code. Article XII (B) of the Joint Plan outlines the procedures for cure and Article XII (C) sets out reasonable procedures for the submission of rejection damage claims.

- Article XIII provides for the assumption of the employee benefit plans including retirement plans.

All of the above-referenced provisions of the Joint Plan are appropriate and not inconsistent with applicable provisions of the Bankruptcy Code and are approved as modified on the record at the Confirmation Hearing and/or in the Confirmation Order.

**B.      Section 1129(a)(2) Requirements**

20.      In compliance with applicable provisions of the Bankruptcy Code, the Plan Proponents did not solicit any votes on the Joint Plan until after approval and transmittal of the Disclosure Statement, and no votes were solicited except pursuant to information set forth within the Disclosure Statement. As explained above, the Plan Proponents also complied with all applicable notice requirements in relation to the Joint Plan and confirmation.

C.    **Section 1129(a)(3) Requirements**

21.    As supported by the testimony at confirmation, the Joint Plan was formulated by the Committee and Debtors with the legitimate and honest objectives of addressing all Claims and Equity Interests in the Bankruptcy Case, and providing for the fair and equitable treatment of such Claims and Equity Interests consistent with the priorities established under the Bankruptcy Code.  There was no intention on the part of the Plan Proponents to achieve a result forbidden by law.

D.    **Section 1129(a)(4) Requirements**

22.    Pursuant to the retention orders entered in the Bankruptcy Case, payments to court-approved professionals are subject to final approval of the Court.  In this regard, Article III of the Joint Plan establishes a procedure for the submission of applications for the allowance of Administrative Claims in the case.

23.    With respect to administration of the Creditor Trust, Article V(C) of the Joint Plan, together with the Trust Agreement contained in the Plan Supplement, sets out provisions for the compensation and reimbursement of the Creditor Trustee and any professionals that the Creditor Trustee may retain.  In the case of the Creditor Trustee, the Joint Plan provides for the Creditor Trustee to be reimbursed for all reasonable out-of-pocket expenses incurred in the performance of his duties and obligations in administering the Creditor Trust.   As for professionals retained by the Creditor Trustee, the Joint Plan authorizes the Creditor Trustee to employ such professionals as the Creditor Trustee deems necessary to assist him in the administration of the Creditor Trust, and to compensate such professionals and reimburse such professionals for out-of-pocket expenses incurred by them on reasonable terms agreed to by the Trustee without the necessity of court approval (with payment of such fees and expenses to be paid from the Trust Assets); provided, however, that the fees and expenses of the Creditor

Trustee and its professionals shall be subject to the review process as set forth in the Confirmation Order and Creditor Trust Agreement.

24.     Subject to the compensation review process set forth in the Confirmation Order and Creditor Trust Agreement as implemented by the Court, the Joint Plan and Creditor Trust Agreement provide for compensation and the reimbursement of costs and expenses of the Creditor Trustee and his professionals on reasonable terms.

**E.     Section 1129(a)(5) Requirements**

25.     The Plan Proponents have disclosed the identity of the Creditor Trustee of the Creditor Trust in the Plan Supplement.

26.     On the Effective Date of the Joint Plan, the Reorganized Debtors will exist with all of their corporate powers and may operate their business free of any restrictions imposed by the Bankruptcy Code, the Bankruptcy Rules or by the Court, subject only to the terms and conditions of the Joint Plan and the Confirmation Order and other documents and instruments executed and delivered in connection therewith, including the Plan Supplement.   The Plan Supplement provides for the appointment of a Creditor Trustee of the Creditor Trust.

27.     JLL Consultants, Inc. was selected by the Committee to serve as the initially-appointed Creditor Trustee.   The appointment of JLL Consultants, Inc. is consistent with the interests of Creditors and with public policy.

**F.     Section 1129(a)(6) Requirements**

28.     The Debtors do not charge any rates that are subject to the approval of any governmental regulatory commission.

**G.     Section 1129(a)(7) Requirements**

29.     There are three impaired Classes under the Joint Plan – Class 2 (Lenders' Secured Claims), Class 4 (General Unsecured Claims), and Class 7 (Existing Equity Interests).

30.     With respect to Class 2, every Creditor holding a Claim within Class 2 has voted to accept the Joint Plan.   With respect to Class 7, holders of Equity Interests were to receive no distributions under the Joint Plan and were deemed to have rejected the Joint Plan.  The Joint Plan, as modified and reflected in the Confirmation Order and Creditor Trust Agreement, now provides for a potential distribution to the Class 7 Existing Equity Interests from any recoveries arising out of retained Causes of Action once the holders of Allowed Claims in Class 4 are paid in full with interest.

31.     With respect to Class 4, the holders of Claims within such Class have either voted to accept the Joint Plan or will receive or retain under the Joint Plan on account of their Claims property of a value, as of the Effective Date of the Joint Plan, that is not less than the amount that such holder would so receive or retain if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code on the Effective Date.  Since the Joint Plan was predicated on the marketing and sale of the Debtors through a competitive bid process, the record in these proceedings and the testimony at confirmation provide sufficient evidence that a liquidation of the Debtors' business in a non-operating Chapter 7 would likely result in a lower recovery to Class 4 Creditors (particularly when considering the additional layer of administrative expenses that would be incurred in the event of conversion).

32.     Under the Joint Plan, on the other hand, holders of Claims within Class 4 are projected to recover at least 80% of the allowable amount of such Claims and the recovery to holders of Equity Interests within Class 7 will be no different than under a Chapter 7 liquidation.

## H.     Section 1129(a)(8) Requirements

33.     Under the Joint Plan, Class 1 (Other Priority Claims), Class 3 (Other Secured Claims), Class 5 (Intercompany Claims) and Class 6 (Intercompany Equity Interests) are not impaired.  Thus, as previously determined in the Disclosure Statement Order and as a matter of

law, Classes 1, 3, 5 and 6 are deemed to have accepted the Joint Plan under the Bankruptcy Code.

34.     In the case of Class 2 (Lenders' Secured Claims), based upon votes timely cast on the Joint Plan by holders of Claims within Class 2, Class 2 has accepted the Joint Plan by the following percentages: 100% in number and 100% in amount.

35.     In the case of Class 4 (General Unsecured Claims), based upon votes timely cast on the Joint Plan by holders of Claims within Class 4, Class 4 has accepted the Joint Plan by the following percentages: 98.16% in number and in excess of 99.43% in amount.

36.     Finally, in the case of Class 7 (Equity Interests), because holders of Equity Interests were not to receive or retain any property under the Joint Plan, Class 7 was deemed to have rejected the Joint Plan as a matter of law.  Notwithstanding the treatment as proposed in the Joint Plan, the Confirmation Order reflects a modification to the Joint Plan that provides that any recoveries from retained Causes of Action over and above the satisfaction of the Allowed Class 4 General Unsecured Claims, plus interest, shall inure to the benefit of the Class 7 Existing Equity Interests.  This constitutes an improvement to the treatment of Class 7.

I.     **Section 1129(a)(9) Requirements**

37.     The Joint Plan provides for the immediate payment in full of all allowed priority claims in the Bankruptcy Case.  Specifically, Article III(B) of the Joint Plan provides for the payment in full, in Cash, of all Priority Tax Claims and Other Priority Claims on or as soon as practicable after the later of the Initial Distribution Date or the date when such Priority Tax Claim or Other Priority Claim becomes an Allowed Priority Tax Claim or Allowed Other Priority Claim.  Except for Administrative Claims, Priority Tax Claims, and Other Priority Claims, there are no other Claims of a kind specified in Section 507(a)(1)-(8) of the Bankruptcy Code in the Bankruptcy Case.

38.     In the case of Priority Tax Claims (Claims of a kind specified in Section 507(a)(8) of the Bankruptcy Code and Secured Claims which would otherwise meet the description of an unsecured claim of a governmental unit under Section 507(a)(8) but for the secured status of the Claims), such Claims are treated under the Joint Plan in a manner that is no less favorable than the most favored non-priority unsecured Claim provided for by the Joint Plan.

**J.      Section 1129(a)(10) Requirements**

39.     Classes 2 and 4, both impaired under the Joint Plan, have overwhelmingly accepted the Joint Plan, even after disregarding the votes of insiders.

**K.      Section 1129(a)(11) Requirements**

40.     The Joint Plan provides for sufficient funding to satisfy all of the distribution requirements under the Joint Plan and to satisfy all of the foreseeable fee and expense obligations of the Creditor Trust.  The Debtors will also continue operations post-confirmation supported by the financial strength of the Equity Sponsor.  Hence, confirmation of the Joint Plan is not likely to be followed by the need for any further non-contemplated liquidation or for further reorganization of either the post-confirmation Debtors or the Creditor Trust.

**L.      Section 1129(a)(12) Requirements**

41.     The Debtors are current in the payment of all fees payable under 28 U.S.C. § 1930 and the Joint Plan provides for the payment of all such fees which are hereafter assessed from the Creditor Trust as they become due.

**M.      Section 1129(a)(13) Requirements**

42.     Article XIII provides for the assumption of employee compensation and benefit plans, policies and programs of the Debtors applicable generally to their employees including, without limitation, the Commodore Plan and all employment contracts, all savings plans,

retirement plans, health care plans, disability plans, severance benefit plans, incentive plans, and life, accidental death, and dismemberment insurance plans and workers' compensation programs.

**N.     Section 1129(a)(14) and (a)(15) Requirements**

43.     None of the provisions within Section 1129(a)(14) and (a)(15) are applicable to the Debtors.

**O.     Section 1129(a)(16) Requirements**

44.     Transfers of property under the Joint Plan will be made in accordance with all applicable provisions of non-bankruptcy law that govern the transfer of property.

**P.     Section 1129(b) Requirements**

45.     Pursuant to both the Joint Plan and Disclosure Statement, the Plan Proponents have requested confirmation of the Joint Plan under Section 1129(b) of the Bankruptcy Code.

46.     In relation to the sole rejecting Class under the Joint Plan – Class 7 (Equity Interests) –the testimony at the Confirmation Hearing confirmed that the treatment afforded to Class 7 under the Joint Plan was driven by the priority scheme established under the Bankruptcy Code and not by any attempt to unfairly discriminate against Class 7.  This is borne out by the structure of the Joint Plan and the auction process approved under the Bid Procedures Order. The Joint Plan, as modified, is fair and equitable to Class 7 and does not discriminate unfairly against Class 7.  Section 1129(b)(2)(C) has been satisfied in that the evidence adduced during the case and at the hearing on the Joint Plan, and in light of the modifications to the Joint Plan as reflected in the Confirmation Order and Creditor Trust Agreement, establishes that the Equity Interest will receive at least the value of such interest, and (ii) no holder of an interest junior to the interest of such Equity Interests will receive or retain any property under the Joint Plan on account of such junior interest.

**Q.     Section 1129(d) Requirements**

47.     No governmental unit has requested the Court to make a determination in accordance with Section 1129(d) of the Bankruptcy Code.  Nevertheless, as supported by testimony, the Joint Plan was not formulated by the Plan Proponents for the purpose of avoiding any taxes or avoiding the requirements of any securities laws.

### PLAN'S CONDITIONS PRECEDENT TO CONFIRMATION

48.     Article XIV(A) of the Joint Plan sets out the conditions precedent to confirmation of the Joint Plan.  In relation to such conditions:  (a) the Court has entered an order, in form and substance reasonably acceptable to the Agent, the Plan Proponents and the Equity Sponsor, approving the Disclosure Statement with respect to the Joint Plan as containing adequate information within the meaning of section 1125 of the Bankruptcy Code; and (b) each of the Agent, the Plan Proponents and the Equity Sponsor  have approved the form and substance of the Confirmation Order; and (c) the Confirmation Order is not required to be a final order as a condition to the occurrence of the Effective Date.

### CONCLUSIONS OF LAW

### JURISDICTION AND VENUE

49.     The Court has jurisdiction over the Bankruptcy Case and the confirmation proceeding pursuant to 28 U.S.C. §§ 157 and 1334.  The confirmation proceeding constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue of the Bankruptcy Case and confirmation proceeding in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## SATISFACTION OF CONFIRMATION REQUIREMENTS

**A.**     **All of the Requirements of Section 1129(a) of the Bankruptcy Code,**
         **With the Exception of Section 1129(a)(8), Have Been Met**

50.     The Joint Plan complies with all applicable provisions of the Bankruptcy Code and, therefore, the requirements of Section 1129(a)(1) of the Bankruptcy Code have been met. In this regard, the Joint Plan satisfies all applicable requirements of Section 1123(a) of the Bankruptcy Code by:

(a)     Designating, in compliance with Section 1122 of the Bankruptcy Code, Classes of Claims (other than Claims of a kind specified in Section 507(a)(2), 507(a)(3), or 507(a)(8) of the Bankruptcy Code) and a Class of Equity Interests.

(b)     Specifying any Class of Claims or Equity Interests that is not impaired under the Joint Plan.

(c)     Specifying the treatment of each Class of Claims and each Class of Equity Interests that is impaired under the Joint Plan.

(d)     Providing the same treatment for each Claim or Equity Interest of a particular Class (unless, in the case of Classes of Claims, the holder of a particular Claim agrees to a less favorable treatment of such particular Claim).

(e)     Providing adequate means for the Joint Plan's implementation.

(f)     Providing for (i) the cancellation and extinguishment of all Existing Equity Interests with such Existing Equity Interests to be rendered null, void and of no further force or effect, whatsoever, (ii) the continuation of the Reorganized Debtors, and (iii) the amendment to the Debtors' Articles and Bylaws to effectuate such objectives; thereby, in combination, satisfying the requirement of Section 1123(a)(6) of the Bankruptcy Code.

(g)     Including only provisions that are consistent with the interests of Creditors and Equity Interest holders and with public policy with respect to the manner of selection of any officer or director of the post-confirmation Debtors, of the Creditor Trustee under the Joint Plan, and any successor to such officers, directors, or Trustee.

All other provisions of the Joint Plan that are not mandated by Section 1123(a) of the Bankruptcy Code are appropriate and not inconsistent with applicable provisions of the Bankruptcy Code, and therefore permissible under Section 1123(b) of the Bankruptcy Code, including, without limitation:

(a)     The Joint Plan's provisions for the preservation, administration and disposition of Causes of Action, including, without limitation, Article IX (F) of the Joint Plan, which are permissible under Section 1123(b)(3) and (b)(6) of the Bankruptcy Code.

(b)     The Joint Plan's provisions for assumption of employee benefits, including its retirement plan, which are consistent with the requirements of Section 1129(a)(13) of the Bankruptcy Code and permissible under Section 1123(b)(6) of the Bankruptcy Code.

(c)     The Joint Plan's provisions for the disposition of executory contracts and unexpired leases and for the administration and treatment of rejection damage Claims, including, without limitation, Article XII (A), (B) and (C) of the Joint Plan, which are permissible under Sections 1123(b)(2) and (b)(6) of the Bankruptcy Code.

(d)     The Joint Plan's distribution provisions, Claims resolution procedures, enforcement provisions, exculpatory provisions, "miscellaneous" provisions (Article XI), and jurisdictional provisions, including, without limitation, provisions within Articles VI, VII, IX, and XI of the Joint Plan, which, as modified by the Confirmation Order, are all permissible under Section 1123(b)(6) of the Bankruptcy Code.

(e)     The Plan Proponents have complied with all applicable provisions of the Bankruptcy Code in proposing and pursuing approval of the Joint Plan, thereby satisfying the requirements of Section 1129(a)(2) of the Bankruptcy Code.  In this regard, the Plan Proponents complied with Section 1125 of the Bankruptcy Code in soliciting votes on the Joint Plan and complied with all applicable notice requirements in relation to the confirmation process, including, without limitation, Fed. R. Bankr. P. 2002, 3016-3019, 6004, 6006, 9007, 9014 and 9019.

51.     The Plan Proponents proposed the Joint Plan in good faith and not by any means forbidden by law, thereby satisfying the requirements of Section 1129(a)(3) of the Bankruptcy Code.

52.     Any payment made or to be made by the Debtors or the Creditor Trust for services or for costs and expenses in or in connection with the Bankruptcy Case, or in connection with the Joint Plan and incident to the Bankruptcy Case, has been approved by, or is subject to the approval of, the Court as reasonable.  In this regard, subject to the review and objection process implemented by the Court as reflected in the Confirmation Order and/or Creditor Trust Agreement, the Joint Plan's provisions for the compensation and reimbursement of expenses of

the Creditor Trustee and professionals employed by the Creditor Trustee are reasonable and approved. There have been no such payments made, nor are any such payments to be made, by the Committee or any person acquiring property under the Joint Plan other than the Creditor Trust, and there are no securities to be issued under the Joint Plan. Based upon the foregoing, the requirements of Section 1129(a)(4) of the Bankruptcy Code have been met.

53. In the Plan Supplement, the Plan Proponents have disclosed the identity and affiliations of the Creditor Trustee of the Creditor Trust, which appointment is consistent with the interests of Creditors and with public policy. The Joint Plan does not provide for a voting trustee of the post-confirmation Debtors. Based upon the foregoing, the requirements of Section 1129(a)(5)(A) of the Bankruptcy Code have been met.

54. The Joint Plan does not provide for, and there are no existing agreements for, the employment or retention of any insiders by the post-confirmation Debtors except with respect to Terry Ryan, the Chief Executive Officer, and Glenn Massey, the Chief Financial Officer, whose employment agreements have been assumed as disclosed in the Plan Supplement. Therefore, the requirements of Section 1129(a)(5)(B) of the Bankruptcy Code have been met or are otherwise inapplicable.

55. The requirements of Section 1129(a)(6) of the Bankruptcy Code are inapplicable because the Debtors do not charge any rates that are subject to the approval of any governmental regulatory commission.

56. Each holder of a Claim or Equity Interest in an impaired Class of Claims or Equity Interests (as applicable) has either accepted the Joint Plan or will receive or retain under the Joint Plan on account such Claim or Equity Interest property of a value, as of the Effective Date of the Joint Plan, that is not less than the amount that such holder would so receive or retain

if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code on the Effective Date. No Class of Secured Claims has made the election under Section 1111(b)(2) of the Bankruptcy Code. Based upon the foregoing, the requirements of Section 1129(a)(7) of the Bankruptcy Code have been met.

57.     Classes 1, 3, 5 and 6 of the Joint Plan have accepted the Joint Plan pursuant to Section 1126(f) of the Bankruptcy Code. Classes 2 and 4 of the Joint Plan have accepted the Joint Plan pursuant to Section 1126(c) of the Bankruptcy Code. Class 7 of the Joint Plan has rejected the Joint Plan pursuant to Section 1126(g) of the Bankruptcy Code.

58.     The Joint Plan provides that with respect to each Claim of a kind specified in Section 507(a)(2) of the Bankruptcy Code (an Administrative Claim under the Joint Plan), the holder of such Claim will receive Cash equal to the Allowed amount of such Claim on the later of the Initial Distribution Date or the date such Administrative Claim becomes and Allowed Administrative Claim or within five (5) Business Days thereafter, unless the holder has agreed to a different treatment of the Claim. There are no Claims in the Bankruptcy Case of a kind specified in Section 507(a)(3) of the Bankruptcy Code. Based upon the foregoing, the requirements of Section 1129(a)(9)(A) of the Bankruptcy Code have been met.

59.     The Joint Plan provides that with respect to each Claim of a kind specified in Section 507(a)(4) or 507(a)(5) of the Bankruptcy Code (an Other Priority Claim under the Joint Plan), the holder of such Claim will receive Cash equal to the Allowed amount of such Claim on or as soon as practicable after the later of the Initial Distribution Date (or the date of Allowance, if later), unless the holder has agreed to a different treatment of the Claim. There are no Claims in the Bankruptcy Case of a kind specified in Section 507(a)(1), 507(a)(6) or 507(a)(7) of the

Bankruptcy Code. Based upon the foregoing, the requirements of Section 1129(a)(9)(B) of the Bankruptcy Code have been met.

60.    The Joint Plan provides that with respect to each Claim of a kind specified in Section 507(a)(8) of the Bankruptcy Code and any Secured Claim which would otherwise meet the description of an unsecured claim of a governmental unit under Section 507(a)(8) but for the secured status of that Claim (in each case, a Priority Tax Claim under the Joint Plan), the holder of such Claim will receive Cash equal to the Allowed amount of such Claim by no later than 15 days after the Effective Date of the Joint Plan (or the date of Allowance, if later), unless the holder has agreed to a different treatment of the Claim. The manner in which such Claims will be satisfied under the Joint Plan is not less favorable than the most favored non-priority unsecured claim provided for by the Joint Plan. Based upon the foregoing, the requirements of Section 1129(a)(9)(C) and (D) of the Bankruptcy Code have been met.

61.    Two Classes of Claims that are impaired under the Joint Plan, Classes 2 and 4, have accepted the Joint Plan, determined without including any acceptance of the Joint Plan by an insider. Accordingly, the requirements of Section 1129(a)(10) of the Bankruptcy Code have been met.

62.    Confirmation of the Joint Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the post-confirmation Debtors or the Creditor Trust under the Joint Plan. Accordingly, the requirements of Section 1129(a)(11) of the Bankruptcy Code have been met.

63.    The Debtors are current in the payment of all fees payable under 28 U.S.C. § 1930 and the Joint Plan provides for the payment of all such fees which are hereafter assessed from the

Creditor Trust as they become due. Accordingly, the requirements of Section 1129(a)(12) of the Bankruptcy Code have been met.

64.    The Joint Plan provides for the assumption after the Effective Date of the Joint Plan of the payment of all retiree benefits (as defined in Section 1114 of the Bankruptcy Code). During the course of the Bankruptcy Case, no modifications were made to the level of such benefits under subsections (e)(1)(B) or (g) of Section 1114 of the Bankruptcy Code. Based upon the foregoing, the requirements of Section 1129(a)(13) of the Bankruptcy Code have been met.

65.    None of the provisions of Sections 1129(a)(14) or 1129(a)(15) of the Bankruptcy Code are applicable to the Debtors.

66.    All transfers of property of the Joint Plan will be made in accordance with any applicable provisions of non-bankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust, thereby satisfying the requirements of Section 1129(a)(16) of the Bankruptcy Code.

**B.    All Applicable Requirements of Section 1129(b)
Of the Bankruptcy Code Have Been Met**

67.    In light of the modifications to the treatment of the Class 7 Existing Equity Interests as reflected in the Confirmation Order and Creditor Trust Agreement, the Joint Plan does not discriminate unfairly, and is fair and equitable, with respect to Class 7, the only Class impaired under the Joint Plan that has not accepted the Joint Plan. Accordingly, the requirements of Section 1129(b) of the Bankruptcy Code have been met.

**C.    Sections 1129(c)-(e) Are Inapplicable**

68.    There are no other proposed Chapter 11 plans in the Bankruptcy Case. Therefore, Section 1129(c) of the Bankruptcy Code is inapplicable.

69.     No party in interest that is a governmental unit has made a request for the Court to not confirm the Joint Plan under Section 1129(d) of the Bankruptcy Code. Therefore, Section 1129(d) of the Bankruptcy Code is inapplicable.

70.     The Bankruptcy Case is not a "small business case" as defined within the Bankruptcy Code. Therefore, Section 1129(e) of the Bankruptcy Code is inapplicable.

**D.      Confirmation of the Plan**

71.     Confirmation of the Joint Plan is in the best interests of the Estate, Creditors and Equity Interest Holders, and the Plan Proponents have satisfied all of the requirements for confirmation of the Joint Plan under Section 1129 of the Bankruptcy Code. Accordingly, the Joint Plan will be confirmed and approved in all respects by the Confirmation Order.

### END OF ORDER ###

**Agreed as to Form and Substance By:**

**MUNSCH HARDT KOPF & HARR, P.C.**
500 N. Akard Street, Suite 3800
Dallas, Texas 75201-6659
Telephone: (214) 855-7500
Facsimile: (214) 978-4365

By: /s/   Joe E. Marshall
      Joe E. Marshall

**ATTORNEYS FOR THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS**

**DUANE MORRIS, LLP**
190 S. LaSalle Street, Suite 3700
Chicago, Illinois 60603
Telephone: (312) 499-0148
Facsimile: (312) 499-6701

By:/s/   Rosanne Ciambrone
     Rosanne Ciambrone

    and

**BRACEWELL & GUILIANI, LLP**
1445 Ross Avenue, Suite 3800
Dallas, Texas 75202
Telephone: (214) 758-1000
Facsimile: (214) 758-8395

By:/s/   Sam Stricklin
     Sam Stricklin

**ATTORNEYS FOR DEBTORS**

**ANDREWS KURTH LLP**
600 Travis, Suite 4200
Houston, Texas 77002
Telephone: (713) 220-4200
Facsimile: (713) 220-4285

By:/s/   Jeffrey E. Spiers
     Jeffrey E. Spiers

**ATTORNEYS FOR LANDRY'S
RESTAURANTS, INC.**

**SCHULTE ROTH & ZABEL LLP**
919 Third Avenue
New York, New York 10022
Telephone: (212) 756-2460
Facsimile: (212) 593-5955

By:/s/   Lawrence Gelber
     Lawrence Gelber

**ATTORNEYS FOR LENDERS**

**DYKEMA GOSSETT PLLC**
1717 Main Street
Suite 4000
Dallas, Texas 75201
Telephone: (214) 761-6700
Facsimile: (214) 761-6701

By:/s/   Stephen C. Stapleton
     Stephen C. Stapleton

**ATTORNEYS FOR V.K.O. ENTERPRISES,
INC.**

**BROWNSTEIN HYATT FARBER SCHRECK,
LLP**
410 Seventeenth Street, Suite 2200
Denver, Colorado 80202
Telephone: (303) 223-1100
Facsimile: (303) 223-1111

By:/s/   Michael J. Pankow
     Michael J. Pankow

**ATTORNEYS FOR CLARION CAPITAL
PARTNERS LP, CLARION OPERATING LLC,
TRUMPET SBIC, TRUMPET INVESTORS, LP,
ERIC KOGAN, JONATHAN HAAS, AND
MARQUES TORBERT**